Sentell & Co. vs Stark.

## No. 1235.

GEORGE W. SENTELL & CO. VS. DORA STARK AND HUSBAND.

37  679
47  1058
47  1273
47  1275

A married woman can compromise a pending suit against her and legally bind herself and her property to the stipulations of the compromise.

When suits for large sums have been instituted against a married woman and she has made answer thereto and failed to plead that the debt was her husband's, or marital coercion or other like defence, and has compromised those suits and thereby obtained a remission of a large part of the sum claimed, she cannot afterwards in a suit upon the compromise-notes set up successfully the above defences and avoid the payment of her obligations thus deliberately given.

APPEAL from the Twelfth District Court, Parish of Avoyelles. Overton, J.

*Thorpe & Peterman* and *Wm. Hall* for Plaintiffs and Appellants:

1. A married woman having paraphernal property and separate in estate and administration by recorded ante-nuptial contract, the husband being without property and indebted to the wife by sworn recorded declaration, who contracts in writing in her own name with the authorization of her husband for the cultivation of her property, and in the contract constitutes her husband her agent for the management and control of the same, is bound by the contract, and cannot be heard to plead in avoidance that her secret purpose was to enable her husband to operate the property for his own benefit, and, therefore, the debt was his, where she has never communicated such purpose to the parties who were induced to contract on her separate credit. 26 Ann. 324 ; 32 Ann. 1103 ; 33 Ann. 624 ; Ibid, 1008 ; Chaffe & Sons vs. Watts (not yet reported).

2. Suits being brought against her for large balances claimed to be owing under such contract and for advances to her separate property, after the expiration thereof, she being personally served with citations, petitions and other process, herself actively participating in the litigation, and throughout the two years of its pendency represented by counsel, and such suits being by her, authorized by her husband and assisted and advised by her counsel, compromised upon a basis greatly reducing the amount of the claim against her and extending time of payment, she is bound by said compromise. 26 Ann. 289 ; 34 Ann. 1171 ; 4 M. 456 ; 6 R. 275.

3. Judgment being entered by the court in accordance with the terms of the compromise, and being in pursuance to the same settled and canceled by notes and mortgage executed by the wife, authorized by her husband, and such notes being before maturity acquired by innocent third parties for value, in a suit brought nine years thereafter by such third holders, she cannot plead that the notes represent an indebtedness of her husband, especially if in the suits compromised by the notes this defence was not disclosed, but other defences, utterly inconsistent therewith, were actively urged. 7 Ann. 34 ; 28 Ann. 294.

4. Married women are bound, like other persons, by judicial admissions, in the absence of satisfactory proof of fraud or want of authority in those who assumed to represent them as counsel. 26 Ann. 401 ; 27 Ann. 73 ; 31 Ann. 100 ; 32 Ann. 962.

5. Mere advice and request by husband do not constitute the marital influence which impairs a married woman's obligation. 15 Ann. 615.

6. Where long accounts are compromised, the court will presume that all objectionable items have been eliminated, and this presumption will prevail in the absence of direct proof to the contrary.

Sentell & Co. vs. Stark.

7. An amended answer, setting up wholly new grounds of defence, cannot be filed during the trial of a cause after plaintiff has closed his evidence in chief, especially when the matters set up in the amendment are not shown to have been unknown to the party at the time of filing the original answer. 1 R. 362; 10 Ann. 178; 20 Ann. 53; 22 Ann. 350; Ibid, 461; 24 Ann. 165; 28 Ann. 109.

8. Auditors of accounts can be appointed and the result of their examination received in evidence only in the manner prescribed by the Code of Practice, Arts. 446 *et seq.*

*Robt. P. Hunter* and *Cullom & Coco* for Defendants and Appellees:

1. "The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage." R. C. C. Art. 2398; 6 L. 346-9; 6 R. 276; 4 A. 65; 8 R. 457; 2 A. 271; 1 A. 428: 5 A. 173; 12 A. 663-725; 13 A. 2; 14 Ð 15-700; 15 A. 352; 16 A. 309, 310-449; 24 A. 95 -142: 26 A. 279; 30 A. 1106; 32 A. 1033; 36 A. 824.

The plaintiff must prove everything necessary to fix the liability of a married woman, whether she be separate in property or not separate; and this must be done by other proof than her confessions or acknowledgments. 1 R. 217-220; 6 R. 276; 1 A. 301; 4 A. 65; 7 A. 93-293; 15 A. 352; 34 A. 528; 13 A. 546; 5 A. 173, 19 A. 206; 24 A. 96.

2. 15 A. 54; 22 A. 457; 26 A. 402, 714; 29 A. 337; 30 A. 492; 28 A. 232, 494; 27 A. 123; 31 A. 734. 832; 30 A. 744, 812, 940, 1157; 32 A. 203, 1103.

Plaintiff is only relieved of such burden when the wife is a public merchant, in matters relating to her trade; or when the married woman is in advance authorized by the judge to borrow or contract. She may even then go behind contracts so authorized when she charges collusion and fraud. 15 A. 54; 21 A. 398; 22 A. 457; 24 A. 89; 26 A. 401-418; 31 A. 832-834; 35 A. 1186,

3. Married women are of limited capacity to contract, and are forbidden to contract except in certain cases. They are classed with minors. R. C. C. 1782-1790; 6 L. 347; 1 R. 218; 6 R. 276; 1 A. 301; 4 A. 65; 7 A. 293.

Whoever deals with a married woman is put on his guard and contracts at his own risk and it is incumbent upon him to ascertain that her proper estate can be charged with the debt. 7 N. S. 64; 5 N. S. 56; 4 R. 508; 3 L. 74; 1 A. 428; 2 A. 579; 3 A. 188, 3 M. 577; 2 N. S. 39; 5 A. 173, 495, 586; 7 A. 144, 293; 24 A. 142; 32 A. 1033; 34 A. 822; 36 A. 824.

"It is settled, to epitomize our jurisprudence, that such transactions cannot be sustained; that the wife and her legal representatives cannot be bound thereby; that she may attack and annul them, or may defend against them; that she is not estopped by her own acts in aid of the transaction, which are presumed to be done under marital influence; that whatever the form of the contract its true character may be inquired into and laid bare; and that in her assault upon even authentic acts she is not confined to counter letters and interrogatories on facts and articles, but may resort to parol evidence to establish their true nature and purpose." 33 A. 1008; 33 A. 659, 1008; 34 A. 632, 822, 1063; 31 A. 734; 30 A. 193, 940; 29 A. 597; 28 A. 758; 29 A. 124; 16 A. 11; 15 A. 621. 628; 14 A. 169, 14; 12 A. 852; 7 A. 145; 6 A. 122; 5 A. 496, 572; 2 A. 756; 1 A. 429; 12 R. 84; 4 R. 508; 7 A. 294, 169; 16 A. 209; 23 A. 323; 28 A. 839.

4. A married woman cannot by any act of hers during the marriage ratify a contract which is originally null. 5 A. 495, 586; 15 A. 569, 628; 28 A. 758; 33 A. 1008; 34 A. 822, 1063; 36 A. 824; 33 A. 659.

A married woman cannot be held for constructive fraud, but it must be actual fraud or deceit; otherwise it would be nothing more than estoppel, which does not apply. Bisland vs. Provosty, 14 A. 173; McIntosh vs. Smith, 2 A. 556.

She is not estopped by payments made to or by her. 28 A. 758; 12 A. 663; 13 A. 2; 7 N. S. 418.

Sentell & Co. vs. Stark.

Nor by her acknowledgments in even notarial acts. 5 A. 173; 14 A. 15, 700; 22 A. 457; 23 Ann. 196; 24 Ann. 89; 7 N. S. 341; 8 N S. 692; 4 R. 508; 10 L. 147; 1 A. 428; 5 A. 586.

She may dispute her liability on her notes in the hands of an innocent endorsee for value before maturity. 34 A. 822; 29 A. 123; 5 F. S. 56; 5 A. 465; 12 A. 853; 5 A. 495; 15 A. 352.

She is not bound by a confession of judgment. 15 A. 628; 29 A. 597; 3 N. S. 498; 2 A. 3, 806; 12 A. 350; 14 A. 165.

In the absence of proof of the wife's separate administration of her paraphernal estate it will be presumed to have been under the management of the husband. 14 Ann. 281; 31 A. 734.

Where contrary allegations and admissions are made by plaintiff and defendant, the defendant is entitled to the benefit of plaintiff's admissions, particularly when they are sustained by proof. 12 A. 583; 15 A. 268.

The husband may be the agent of the wife, but is to be held strictly to the terms of the agency and cannot exceed his authority. Whoever deals with the agent is bound to know that he is acting within the scope of his authority. 4 N. S. 502; 6 La. 47; 5 Rob. 134; 2 R. 274; 6 R. 294; 12 R. 540, 221; 8 R. 236; 4 A. 236, 396; 15 A. 647; R. C. C. 2996-7; Demalombe, Vol. 4, p. 239, § 210.

A party seeking to recover must make his claim certain; it is not sufficient to render it probable. 14 La. 451; 19 L. 198; 8 M. 14; 10 M. 419; 2 Rob. 27. 12 R. 471; 6 Ann. 28; 8 A. 25; 10 A. 310; 12 A. 12; 13 A. 105; 15 A. 268, 457.

Failure to produce evidence, which it was essential for plaintiff to have, and which, if it existed, it was in his power to produce, it is to be construed against him. 36 A. 841.

"It is a matter of no consequence how the plaintiffs kept their accounts. * * * Her liability is in no manner affected by the circumstance that, while dealing with her husband, they chose to make the semblance of dealing with her." 36 Ann. 824; 31 A. 734; 29 A. 75.

---

The opinion of the Court was delivered by

MANNING, J. The suit is upon mortgage notes of a married woman for $8,000 and the defence is that they were executed for her husband's debt and under his marital influence and she is not bound thereby.

Dora Lambeth married T. O. Stark in 1868. She owned two plantations jointly with her sister. He owned nothing. They made a marriage contract that there should not be a community of acquets and gains, that each shall remain separate in estate, and the wife retained the administration of her property brought in marriage and all that she should thereafter acquire.

The two plantations were cultivated in 1871 under a partnership entered into by Johnson & Goodrich of New Orleans and T. O. Stark as agent of his wife and her sister, wherein the two owners "put the use of their lands rent-free against the capital" of the merchants, and "Stark as agent had the control and administration of the plantations without charge for services." Johnson & Goodrich refused to continue this arrangement in 1872 and for that year they furnished supplies and made advances to the two plantations. The plantations were largely

in debt by the end of that year and two suits were instituted in January 1873 by Johnson & Goodrich against the defendant and her sister upon the partnership account of 1871 and the supply account of 1872— the one suit being for a balance of $31,734.09 and the other for $17,709.90.

At the October term 1873 the defendant and her sister filed their answers.   To the suit on the partnership account they pleaded that they had entered into the partnership for the purpose and in the manner alleged, and in order that the provisions of their contract of partnership may be understood by the court they annex a copy.   They also annex a statement of the operations of the partnership by which they admit of the amount advanced by the plaintiffs, $8909.63 was for stock and implements and $4623.73 was for permanent improvements of the plantations, and after reciting their defence in detail claim a balance in their favour of $1690.34.   Then follows this clause:—

"Your respondents aver that T. O. Stark was their agent only for the purpose of managing their plantations in the year 1871 and that he had no authority to contract for them or bind them in any manner not contemplated by the written contract."

The answer to the suit for supplies avers that the contract of partnership gave the merchants the right to continue it and that they did elect to continue it through 1872, and therefore they have no right to sue for specific items of indebtedness but must be relegated to their action on the partnership and for its settlement.

The suits after two years and more delay were fixed for trial in May 1875.   Mrs. Stark and her husband went to the parish-seat "expecting the case to be tried" as she says in her testimony.   She staid there two days and then a compromise was made of the whole litigation, by which she and her sister were to confess judgment for $20,000 in the partnership suit and for $10,000 in the supply suit, but these judgments were to be cancelled if Mrs. Stark and her sister shall each execute her notes for $8,000 and secure them by mortgage within thirty days from that date, and in default of their doing so the judgments were to stand.   The judgments were entered in court.   Within thirty days Mrs. Stark executed three notes for $8,000 and gave the mortgage stipulated and so did her sister, and the judgments were cancelled.

This suit is upon the notes thus given and to enforce the mortgage. The sister's property has already been sold to satisfy her debt. Sentell & Co. bought these notes immediately after viz in June 1875.   Johnson & Goodrich had failed and owed Sentell & Co. a larger sum than these notes.   They took them in payment.

The defence that the debt is the husband's fails utterly. Mrs. Stark was separate in property and her property was of that kind that is worthless unless cultivated. Her husband had nothing but business-qualifications and she utilized him to manage her property and to relieve her of the annoyance of attending to its details. She made him her agent and in the exercise of powers under that agency he made the contract of partnership for the cultivation of her property in 1871, and when sued upon it she avowed the agency judicially and insisted that she was not responsible for any debt incurred outside of it.

There is no averment nor pretence of marital influence made in the defence to those suits. The sums for which judgment was demanded amounted to near fifty thousand dollars. We may assume they would have absorbed the property. Near a year passed after the institution of the suits before answers were filed. She had experienced and efficient lawyers and it is incredible that she should have omitted to tell them that her husband had coerced her, if it were a fact, and equally incredible that they should have omitted to plead it if she had told them. As time wore on the litigation and the impending ruin it threatened must have been the subject of anxious thought and when the time for trial arrived Mrs. Stark was present to support the averments of her answer by her own testimony.

A trial was averted by the compromise and the sum agreed to be paid by it was about one-third of that demanded in the suits. Mrs. Stark had denied indebtedness for any sums beyond the scope of her agent's powers, admitting that she was liable for whatever debt he had contracted within them. In the accounts of Johnson & Goodrich introduced by the defendant are items that on their face show or imply that they are for Mr. Stark personally—money paid on his sight drafts and the like. Excluding all of these and more beside there is left a sum far exceeding the amount of the notes. The two sums appearing on her own statement annexed to her answer in the partnership suit as expenditures during 1871 alone for permanent improvements and stock and implements amount to near the sum total of the compromise notes, to say nothing of what was similarly expended in 1872.

We have not entered into the consideration of the long list of authorities laid before us with laborious care by the defendant's counsel touching the right of the defendant as a married woman to plead marital coercion, non-liability for husband's debt, etc. because there is no need of it. Her right in defending suits is fully maintained and

the extent of it has been defined in those authorities, but she has not been hampered in this case. She has been given full rein and has pleaded whatever she wanted to plead and has said as a witness whatever she wanted to say.

And what is the result of it all? She is the only witness in support of these defences and she makes no attempt to explain how or the manner in which the marital coercion was applied. No circumstances are given, no words that were said, no acts that were done—nothing but the repeated iteration of the assertion—"my husband influenced me," and again that he and her sister influenced her.

During the pendency of the original suits for the large sums already stated she had ample time to have formulated and presented the defences she now makes, and when the compromise of them was made she was assisted by counsel. One of them is a witness to the Act she signed. That a married woman can compromise a pending suit against her and legally bind herself has been decided in Barron v. Sollibellos, 26 Ann. 289, where the facts were very similar to those in the case at bar, and she cannot be heard to set up the defence that the debt was her husband's in a suit upon the compromise after she has failed to make it in the previous suit, or withdrawn it in consideration of the advantages she secured by the compromise. If a married woman under such circumstances can go behind her own judicial admissions and repudiate them she will have an immunity that the law has not conferred upon her. Thornhill v. Bank, 34 Ann. 1171; Chaffe v. Watts, not yet reported.

We think the defendant has no escape from the payment of the obligations and that the judgment below in her favour is error. Therefore

It is ordered and decreed that the judgment of the lower court is avoided and reversed, and that the plaintiffs Geo. W. Sentell & Co. have and recover of the defendant Dora Stark eight thousand dollars with eight per cent. per annum interest thereon from the fifth day of May 1875, and five per centum upon this sum additional as attorney's fees, and the costs of both courts, subject to a credit of three hundred and fifty-four 67-100 dollars on July 12, 1876. It is further adjudged and decreed that the mortgage claimed in the petition in this suit is recognized as resting upon the land and other property described therein to secure the payment of this judgment and the same is ordered to be enforced.